**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | |
|---|---|
| **PATRICIA KENNEDY** | **PLAINTIFF** |
| V. | CAUSE NO. 1:09CV254-LG-RHW |
| **BAE SYSTEMS INFORMATION TECHNOLOGY, INC.** | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is Defendant BAE Systems Information Technology, Inc.'s ("BAE") third Motion for Summary Judgment [90]. *Pro se* Plaintiff Patricia Kennedy filed this action under Title VII, 42 U.S.C. § 1981, and state law for alleged retaliatory termination. BAE argues that it and Plaintiff Kennedy had executed a binding settlement agreement with respect to Kennedy's termination from BAE, and that Kennedy's filing of the instant action is in violation of the parties' agreement. BAE argues that Kennedy's complaint should be dismissed with prejudice, and that summary judgment should be granted in favor of BAE on its counterclaims.

Plaintiff Kennedy filed a response [95] opposing the motion, and Defendants replied. The Court has considered the parties' submissions and the relevant legal authority. The motion is granted in part and denied in part.

### FACTS AND PROCEDURAL HISTORY

According to the Complaint, Kennedy was employed by BAE as a computer

trainer from 1978 to 2006 at Keesler Air Force Base in Biloxi, Mississippi.

In January of 2006, she filed a charge of racial discrimination with the Equal Employment Opportunity Commission. She alleged that BAE failed to promote and train her because of her race. In March 2006, she added a retaliation charge, claiming that her supervisor was not promoting her because of an even earlier charge of racism related to a failure to give her a pay raise. After the EEOC found reasonable cause with respect to Kennedy's charge, she and BAE settled her claims in August of 2006 in the form of a signed Settlement Agreement. The Settlement Agreement provided that Kennedy would resign from her employment with BAE.

Subsequently, Kennedy filed a third EEOC charge on January 30, 2007, alleging that in retaliation for the 2006 EEOC claims, BAE forced her to resign from her employment. On September 30, 2008, the EEOC found reasonable cause. The EEOC issued a Notice of Right to Sue on January 6, 2009. Kennedy filed this lawsuit on April 3, 2009, and brings claims of retaliation under Title VII and 42 U.S.C. § 1981. She also asserts a state law claim of misrepresentation.[1] She appears to allege that the forced resignation happened as a result of a modification occurring after she had signed the Agreement.

Defendant BAE filed counterclaims related to Kennedy's alleged violation of the parties' settlement agreement, including breach of contract, fraud in the

---

[1] Kennedy's complaint also alleged a state law claim of infliction of emotional distress, but that claim was dismissed on December 6, 2010. (Memorandum Opinion and Order Granting in Part and Denying in Part Third Motion to Dismiss or, in the Alternative, for Summary Judgment and Denying Motion to Strike, ECF No. 50).

inducement, misrepresentation, breach of duty of good faith and fair dealing, unjust enrichment, and promissory estoppel. (Def.'s Answer to Compl., Affirmative Defenses, Countercl., ECF No. 52). In the instant motion, BAE asks the Court to dismiss Kennedy's complaint with prejudice, and grant summary judgment in favor of BAE on its counterclaims.

## DISCUSSION

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence in the light most favorable to the non-moving party. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). Here, BAE must show that, even when viewing the evidence in the light most favorable to Kennedy, there is no genuine dispute as to any material fact and BAE is entitled to judgment as a matter of law. Once BAE has satisfied this requirement, Kennedy, as the plaintiff with the burden of proof at trial, bears the burden of proof at the summary judgment stage to show that the motion should not be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986).

**I. The Settlement Agreement**

BAE's motion for summary judgment rests on its assertion that Kennedy signed a Settlement Agreement ("Agreement") with BAE under which she consented to her termination and released all claims against BAE. BAE submits that the agreement Kennedy signed is the document BAE attaches as Exhibit 7 to its

summary judgment motion. *See* Def.'s Ex. 7, ECF No. 91-7.

BAE argues that Kennedy is bound by this Agreement, which by its terms made clear that Kennedy's decision to sign the Agreement was knowing and voluntary; Kennedy's Title VII waiver was knowing and voluntary; Kennedy has conceded that she understood that by signing the Agreement, her employment would be terminated as of June 6, 2006; Kennedy's allegations of misrepresentations regarding the Agreement are without merit; and that there was nothing retaliatory about the terms of the Agreement. *See* Def.'s Mem. at 8-17, ECF No. 91.

In support of its arguments, BAE submits the document it asserts is the Agreement. (Def.'s Ex. 7, ECF No. 91-7). The first page of the Agreement sets forth a series of recitals, the first of which states, "the Employee was employed by BAE and her employment was terminated effective June 9, 2006." *Id.* at 2. It also provides for a $75,000.00 payment by BAE to Kennedy "in consideration for the promises contained herein." *Id.* Among other things, the Agreement contains a release of claims discharging BAE of all actions related to Kennedy's employment, including claims under Title VII, as well as a covenant not to sue asserting claims released by the Agreement. *See id.* at 3. The document also states that Kennedy agrees she is entering the Agreement "knowingly and voluntarily." *Id.* at 5. It is signed by Patricia Kennedy, and her signature is dated July 26, 2006. *Id.* at 5, 8. Andrew Mullin signed the Agreement on behalf of BAE, and his signature is dated

August 7, 2006. *Id.* at 8.

BAE also submits portions of Kennedy's deposition, in which she stated that the June 9, 2006 termination date was in the document she signed and that she understood that at the time she signed it. (Def.'s Ex. 1 at 38, 42, 53-54, ECF No. 91-1).

In her response to BAE's motion for summary judgment, Kennedy claims that she actually signed a different document as a result of a "bait and switch operation." (Pl.'s Resp. at 1, 4, ECF No. 95). In earlier pleadings, Kennedy had alleged that the document she signed was modified after she signed it to include a termination date of June 9, 2006. *See* Order Granting in Part and Denying in Part Mot. to Dismiss at 5, ECF No. 50. Kennedy previously represented to the Court that "Defendant insisted that the Plaintiff permit the Defendant to take post-agreement action to modify her employment record to reflect that she had been terminated as of June 9, 2006," and that this "misrepresentation was used to cover up the fact" that Kennedy did not receive pay or health insurance benefits during period from June 10, 2006 to August 9, 2006. (Pl.'s Resp. to Def.'s Mot. to Dismiss at ¶ 4, ECF No. 44). *See also* Pl.'s Resp. to Def.'s Mot. to Dismiss at 1, ECF No. 20 (asserting that "the Defendant made the agreement retroactive to June 9, 2006"); Pl.'s Resp. to Def.'s Mot. to Dismiss or for Summ. J. at 1, ECF No. 28 (same); Pl.'s Resp. to Def.'s Mot. to Dismiss at 2-3, ECF No. 43 (stating "the Defendant insisted that the Plaintiff permit the Defendant to take post-agreement action to modify her employment record to reflect that she had been terminated as of June 9, 2006. This

mispresentation . . . claim should not be dismissed.").

Now, in response to the instant motion, Kennedy alleges that there was another agreement between the parties, which she signed, and that she did not sign the Settlement Agreement submitted to the Court by BAE. Kennedy attaches a "General Release and Separation Agreement" as Exhibit 1 to her response, and claims this is the document she signed.[2]

Kennedy's Exhibit 1 appears to be a settlement between Kennedy and BAE, but it is not signed or dated. The document includes a general release of claims by Kennedy, and provides for termination of Kennedy's employment with BAE on an unspecified date and payment by BAE in an unspecified amount. (Pl.'s Ex. 1 at 2-3, ECF No. 95-1.) Kennedy claims that the document she signed had a termination date of June 9, 2006, provided for payment in the amount of $75,000.00, and was dated July 26, 2006. (Pl.'s Resp. at 1, ECF No. 95). Kennedy testified in her deposition that she did not know what happened to the copy of the Agreement she signed. *Id.* at 3. Kennedy does not explain why the Settlement Agreement submitted by BAE bears her signature, or why she does not have a signed copy of the document she submits is the Agreement she signed.

---

[2] This is the first time Kennedy has raised the allegation of another settlement agreement to the Court; there is no mention of this second agreement in Kennedy's complaint or any of her many filings in the record to date. BAE first presented to the Court the document it claims is the parties' agreement in June 2009, shortly after Kennedy filed her complaint in April 2009. *See* Def.'s Mot. to Dismiss, Ex. 6, ECF No. 7-6. Kennedy does not explain why she did not allege that there was a second agreement at that time, or at some other point prior to her deposition, which occurred over two years later in July 2011.

BAE points out that even though Kennedy now claims she signed this other Agreement, Kennedy has conceded that the document she claims she signed is identical in key respects to the document BAE submits is the parties' Settlement Agreement. (Def.'s Reply at 6, ECF No. 96). Specifically, in Kennedy's deposition, she admitted that she understood she was agreeing to a termination date of June 9, 2006, she would receive monetary consideration in the amount of $75,000.00, she had twenty-one days to consider the Agreement and seven days to revoke it, and that she was releasing all claims against BAE and agreeing to a covenant not to sue. (Def.'s Ex. 1 at 11, 35-38, 40-42, ECF No. 91-1).[3]

## II. Misrepresentation Claim

In her complaint, Kennedy alleges that because the "Settlement Agreement . . . was misrepresented" to her, she "unknowingly agreed to a full resignation of her employment with Defendant." (Compl. At ¶ 7, ECF No. 1). Based on the evidence presented, the Court finds that there is no genuine issue of material fact with respect to this claim.

A "material fact" is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

---

[3] Kennedy also testified, however, that there were "some differences" between the two agreements, *id.* at 52, and Kennedy claims that under the Agreement she claims she signed she was entitled to maintain her insurance under COBRA. *Id.* at 66. The document Kennedy submits is the parties' Agreement does contain a provision regarding maintaining insurance benefits for the remainder of the month in which she was terminated, *see* Pl.'s Ex. 1 at 2, ECF 95-1, but Kennedy states in her response that she "did not continue with COBRA because of the cost." (Pl.'s Resp. at 4, ECF No. 95).

genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* The Court finds that there is no factual basis for Kennedy's claim that a misrepresentation of the Agreement resulted in her resignation from BAE. In accordance with Federal Rule of Civil Procedure 56(c)(1), BAE has cited to materials in the record, including both agreements and Kennedy's deposition, that demonstrate the facts supporting this claim are not disputed. Kennedy admitted in her deposition that *both* documents--the agreement she submits is the document she signed, as well as the agreement BAE submits is the Agreement--contain a provision terminating her employment as of June 9, 2006. *See* Def.'s Ex. 1 at 38, 40-41, ECF No. 91-1; Def.'s Ex.7 at 2, ECF No. 91-7; Pl.'s Ex. 1 at 2, ECF No. 95-1. Moreover, Kennedy testified repeatedly in her deposition that at the time she signed the Agreement, she understood that the Agreement provided that her employment was terminated effective June 9, 2006. *See* Def.'s Ex. 1 at 35-36, 38, 40-41, 42, 52-54, ECF No. 91-1.

Because there is no dispute of fact as to whether the termination of her employment was misrepresented in the Agreement, BAE is entitled to summary judgment on Kennedy's claim of misrepresentation.

### III. Retaliation Claims

Kennedy's complaint also alleges retaliation claims under Title VII and 42 U.S.C. § 1981. To establish a prima facie case for retaliation under Title VII and Section 1981, a plaintiff must show that (1) she engaged in activity protected by Title VII; (2) she suffered an adverse employment action; and (3) a causal

connection existed between the participation in the protected activity and the adverse employment action.  *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004); *Foley v. Univ. of Houston System*, 355 F.3d 333, 340 n.8 (5th Cir. 2003). Kennedy's complaint states that she was "retaliated against" by Defendant, "as [she] was forced to resign from her employment."  (Compl. at ¶ 9, 11, ECF No. 1). In her deposition, Kennedy testified that her claim of retaliation was based on her allegation that there were two different agreements.  (Def.'s Ex. 1 at 65-66, ECF No. 91-1.)[4]

   *A.  Retaliation Claims Based on the Misrepresented Agreement*

Reading Kennedy's complaint as a whole, and in light of her deposition testimony, it appears that Kennedy's retaliation claims are based on an allegation that, because she had filed EEOC complaints, the "Settlement Agreement was misrepresented" to her, and as a result of the misrepresentation, she was "forced to resign from employment with Defendant, retroactive to June 9, 2006."  (Compl. at ¶¶ 7-9, ECF No. 1).  While the complaint makes no mention of the two different

---

[4]  Specifically, Kennedy testified:

> A.  Because that's a form of retaliation, you know. They both were separate agreements.  Now, granted, there was some things there that were the same; but there were some things in it that were different as well.
> Q.  So is that the retaliation, that you got two different agreements?
> A.  Yeah.  How am I going to know which one was valid?

Def.'s Ex. 1 at 65-66, ECF No. 91-1.

agreements, the Court will assume, for purposes of the motion, that it alleges a misrepresentation on that basis. However, as discussed above, there is no factual support for Kennedy's claim that a misrepresentation forced her to resign from BAE. Therefore, she cannot base a retaliation claim on this allegation. Kennedy cannot logically argue that knowingly signing one agreement that provided for her termination while thinking it was another agreement that also provided for her termination amounted to retaliation because she was terminated. Kennedy has admitted that she knowingly agreed to her resignation. To the extent Kennedy's retaliation claims are based on her allegation that she was forced to resign based on a misrepresentation, they should fail, and BAE is entitled to summary judgment on these claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986) (holding summary judgments must be granted if there is no need for a trial).

      B. *General Retaliation Claim Based on Protected EEO Activity*

It is not clear to the Court whether or not Kennedy's complaint also makes the claim that BAE simply forced her to resign in retaliation for filing her EEOC charges, regardless of the "misrepresentation" of the Agreement. Kennedy's complaint states that she filed the January 30, 2007 EEOC charge based on retaliation because she "was forced to resign from her employment." *Id.* at 9. Likewise, Kennedy's EEOC charge makes the general statement that, in retaliation for filing her earlier EEOC charge, BAE forced her to resign. (Def.'s Ex. 11 at 2, ECF No. 91-11). To the extent Kennedy's complaint does allege a more general retaliation claim, this claim also fails.

Kennedy has demonstrated that she engaged in activity protected by Title VII, and that she was terminated. However, to establish a prima facie case of retaliation, Kennedy must demonstrate a causal connection between the protected activity and the adverse employment action, and she has failed to do so. Kennedy has not put forth any piece of evidence that BAE terminated her *because* she filed charges of discrimination with the EEOC. As discussed above, Kennedy agreed to her termination under the terms of the settlement. Moreover, even if Kennedy had put forth any such evidence, the language of the Agreement would preclude Kennedy's retaliation claims.

If Kennedy signed the document she claims is the settlement agreement, she agreed to a general release of claims and a covenant not to sue.[5] Pl's Ex. 1 at 3 (¶ 3), ECF No. 95-1. This provision provides:

> It is Employee's specific intent and purpose to release and discharge [BAE] from any and all claims and causes of action of any kind or nature whatsoever, whether known or unknown, whether specifically mentioned herein or not, which may exist or might be claimed to exist at or prior to the date hereof, and Employee hereby expressly waives any right or claim of right to assert hereafter any cause of action or claim or demand of any kind

---

[5] Kennedy claims that she signed one agreement and BAE claims she signed another, but both agreements contained a release of claims and an agreement that Kennedy resign from BAE. The Agreement submitted by BAE contains a release of claims that is not exactly the same as the release provision in the Agreement submitted by Kennedy. *See* Def.'s Ex. 7 at ¶ 3, ECF No. 91-7. While there are differences between the releases, it is clear that whichever agreement Kennedy signed, she agreed to a release of claims. Again, for the purposes of this motion, the Court views the facts in the light most favorable to Kennedy, so the Court will examine the Agreement submitted by Kennedy.

11

> whatsoever which may exist or might be claimed to exist
> as of or prior to the date of this Agreement that has,
> through oversight or error, intentionally or
> unintentionally, been omitted from this Agreement[.]

*Id.* The release of claims specifically mentions Title VII and 42 U.S.C. § 1981. Therefore, Kennedy's claims of retaliation, based on her apparent allegation that this Agreement forced her to resign from employment, would be precluded by the above release of claims, which references claims "of any kind" "as of" and "at" as well as "prior to" the date of the Agreement.

In order for release of an employment discrimination claim such as this one to be considered valid, the release must be "knowing and voluntary." *Smith v. Amedisys Inc.*, 298 F.3d 434, 441 (5th Cir. 2002) (citing *Rogers*, 781 F.2d at 454); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 52 n. 15 (1974).[6] The Fifth Circuit uses a "totality of the circumstances" approach to evaluate whether such a release was "knowing" and "voluntary." *Id.* (citing *O'Hare v. Global Natural Res.*, 898 F.2d 1015, 1017 (5th Cir.1990)). In this analysis, "[t]he employer bears the burden of establishing that its former employee 'signed a release that addresses the claims at issue, received adequate consideration, and breached the release.'" *Id.* (citing *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1986)). It then

---

[6] The Court's enforcement of Agreements releasing Title VII claims is governed by Federal common law. *Rogers v. General Elec. Co.*, 781 F.2d 452, 454 (5th Cir.1986). Additionally, the Court addresses the release of Kennedy's Title VII claims and Section 1981 claims under the same analysis, as both claims arise under federal civil rights law and both address discrimination in employment based on race. *See Player v. Kansas City Southern Ry. Co.*, No. 06-1980, 2011 WL 5573831 at *2 (W.D. La., Nov. 16, 2011).

becomes the employee's burden to "demonstrat[e] that the release was invalid because of fraud, duress, material mistake, or some other defense." *Id*

BAE has met its initial burden of establishing that: Kennedy signed a release that addresses the claims at issue; BAE paid the sum of $75,000 under the settlement; and that Kennedy has breached the release contained in the Agreement by filing this action. Kennedy has the burden, then, to establish that the release was invalid.

The Court finds that, under the totality of the circumstances, Kennedy has not demonstrated there is a genuine issue of material fact as to whether she knowingly and voluntarily executed the release of claims.

As noted above, the settlement agreement Kennedy submits contains a release of claims that would preclude this action, so any claim of "misrepresentation" with respect to the release is unsupported by the facts as Kennedy alleges them. Kennedy acknowledged in her deposition that she knew the Agreement she was signing contained a release of claims. (Def.'s Ex. 1 at 36, ECF No. 91-1). She testified that a human resources employee had "read every single paragraph" of this Agreement to her three months before she eventually signed it, and that her attorney also read the entire Agreement to her at the time she signed it. *Id.* at 35-37.

There is no evidence suggesting that Kennedy did not understand what she was doing when she signed the release. Kennedy was represented by counsel during the negotiations with BAE and at the time she signed the Agreement. The

13

terms of the Agreement Kennedy submits are clear; the document states, in unambiguous terms, that Kennedy shall resign from BAE, and that she is releasing all claims against BAE by signing the Agreement. (Pl.'s Ex. 1 at 2 (¶ 1) and 3-5 (¶ 3), ECF No. 95-1). The Agreement provided for a 21-day period during which Kennedy could decide whether to sign it, as well as a 7-day period during which she could revoke her signature. (Pl.'s Ex. 1 at 5 (¶ 5), ECF No. 95-1). At the time Kennedy signed the Agreement, she was in the presence of her attorney, and no BAE representatives were present. (Def.'s Ex. 1 at 35-37, ECF No. 91-1).[7]

Kennedy argues in response to the instant motion that she was "under duress" when she signed the Agreement. Kennedy appears to allege that, because she was not allowed to return to work after she used up her vacation time on June 9, 2006, she was without an income, and therefore under duress to sign the

---

[7] The Fifth Circuit has considered the following factors relevant in determining whether an employee has established a defense to the validity of the release: (i) plaintiff's "education and business experience;" (ii) the length of time plaintiff had "access to the agreement before signing it;" (iii) plaintiff's role in determining the agreement's terms; (iv) "the clarity of the agreement;" (v) whether plaintiff "was represented by or consulted with an attorney;" and (vi) whether the consideration "exceeds employee benefits to which the employee was already entitled by contract or law." *Smith*, 298 F.3d at 441 (citing *O'Hare*, 898 F.2d at 1017). In addition to the discussion above, the Court notes that at the time of her settlement with BAE, Kennedy had been a computer trainer for the United States Air Force for over twenty years, and she has a college degree in business administration. (Compl. at ¶ 5, ECF No. 1; Def.'s Ex. 1 at 8, ECF No. 91-1). In exchange for Kennedy's waiver, BAE sent a check in the amount of $75,000 to Kennedy's counsel, and Kennedy testified in her deposition that she agreed to the settlement sum of $75,000. (Def.'s Ex. 1 at 11, 56-57, ECF No. 91-1).

Agreement when she did so on July 26, 2006, and again in early August 2006.[8] *See* Def.'s Ex. 1 at 37, ECF No. 91-1. The Court is not inclined to find that there is a genuine dispute of material fact based on Kennedy's general assertion, made only in response to the motion for summary judgment, that she was "under duress" when she signed the Agreement. *See Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 Fed. Appx. 306, 308 (5th Cir. 2011) (per curiam) (unpublished). *See also Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993) (summary judgment is appropriate if nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation).

"Duress strikes at whether a party actually consented to a contract," and requires that the "dominant party . . . override the volition of the weaker party" so that she is deprived of "free exercise of . . . her own will." *Estate of Davis v. O'Neill*, 42 So.3d 520 (Miss. 2010) (citation omitted). Kennedy does not claim that she was deprived of her free will when she signed the Agreement, in the presence of her counsel, knowing and understanding that it included a release of claims.

Kennedy testified repeatedly that at the time she signed the Agreement, she knew it provided she would terminated effective June 9, 2006. If Kennedy believed her resignation was in retaliation for filing her EEOC claims, she could have sought

---

[8] Kennedy was sent home during the pendency of an investigation. The facts are unclear as to whether she was paid during that time. In her response and other pleadings, Kennedy appears to claim she was not paid, but in her deposition, she agreed she had been on administrative leave with pay. *See* Pl.'s Resp. at 5, ECF No. 95; Def.'s Mem. at 2, ECF No. 91; Def.'s Ex. 1 at 21, ECF No. 91-1.

her attorney's counsel, and she could have declined to sign the Agreement and taken legal action against BAE. *See Hughes v. Grand Casinos, Inc.* 199 F.3d 440, 1999 WL 1068293, at *2 (5th Cir. Oct. 22, 1999) (per curiam) (unpublished). Instead, Kennedy chose to sign the Agreement, and in consideration for that agreement, Kennedy received the $75,000 BAE paid under the terms of the settlement, minus her attorney's fees.

It is an established principle of federal common law that "one who agrees to settle his claim cannot subsequently seek both the benefit of the settlement and the opportunity to continue to press the claim he agreed to settle." *Kirby v. Dole*, 736 F.2d 661, 664 (5th Cir.1984) (citations omitted). Kennedy cannot now pursue claims prohibited by the terms of the settlement agreement she submits she signed. *See Smith v. Amedisys Inc.*, 298 F.3d 434 (affirming summary judgment in favor of employer where employee had signed a general release of claims and subsequently filed suit under Title VII). Accordingly, the Court grants BAE's motion for summary judgment on Kennedy's retaliation claims.

## IV. BAE's Argument Pursuant to Federal Rule of Civil Procedure 37

BAE also argues that Kennedy's claims should be dismissed pursuant to Federal Rule of Civil Procedure 37(b)(2) for failure to comply with this Court's order of August 8, 2011. BAE raises its Rule 37 argument only in rebuttal to Kennedy's response to BAE's summary judgment motion. A reply memorandum is not the appropriate place to raise new arguments for dismissal; therefore the Court will not consider BAE's argument pursuant to Rule 37.

16

### V. BAE's Counterclaims

BAE further argues that it is entitled to summary judgment on its counterclaims. BAE submits that Kennedy has admitted that she signed the Settlement Agreement knowingly and voluntarily, and agreed not to pursue claims against BAE in exchange for $75,000.00. BAE also notes that Kennedy failed to respond to Requests for Admission served on her by BAE, and argues that those matters should be deemed admitted as a matter of law under Federal Rule of Civil Procedure 36(a)(3).[9] (Def.'s Mem. at 6-7, 21 n.21, ECF No. 91). BAE argues that Kennedy breached the parties' contract when she filed this action, and to allow such claims to proceed would "destroy the value of all contracts." *Id.* at 22.

BAE's counterclaims include breach of contract, fraud in the inducement, misrepresentation, breach of duty of good faith and fair dealing, unjust enrichment, and promissory estoppel. (Def.'s Answer to Compl., Affirmative Defenses, Countercl., ECF No. 52). BAE argues in the instant motion that it is entitled to judgment as a matter of law on all of these claims. However, BAE does not provide any specific discussion of the various counterclaims, or demonstrated how it has

---

[9] Rule 36 addresses requests for admission, and provides that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." F.R.C.P. 36(a)(3). BAE submits that it served a series of Requests for Admission on Kennedy in May 2011, and Kennedy never responded or objected to the requests, which should deem them admitted. In her deposition testimony in July 2011, Kennedy provided testimony that would contradict some of the admissions. Therefore, the Court will, for purposes of the summary judgment motion, consider Kennedy's deposition testimony with respect to those matters which would otherwise be admitted.

17

established a prima facie case under each of these claims. The Court can not grant summary judgment in favor of BAE on its counterclaims unless it has met its burden to show the absence of a question of material fact as to each claim. Accordingly, BAE's motion for summary judgment on its counterclaims against Kennedy is denied.

**IT IS THEREFORE ORDERED AND ADJUDGED** that for the reasons stated above Defendant BAE Systems Information Technology, Inc.'s Motion for Summary Judgment [90] should be and is hereby **GRANTED.** Plaintiff's claims against Defendant are therefore dismissed. **IT IS FURTHER ORDERED AND ADJUDGED** that the motion is **DENIED** as to Defendant's counterclaims.

**SO ORDERED AND ADJUDGED** this the 14th day of December, 2011.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE